# HILGERT v. BARBER ASPHALT PAVING COMPANY, Appellant.

In Banc, March 20, 1903.

1. **Appellate Jurisdiction:** IMPAIRMENT OF CONTRACTS: DECISIONS OF COURTS.   An allegation in an answer that a contract for paving streets was valid and that the ordinance authorizing the work, though not completed within the time specified, was legally extended, and that for the court to hold the contract invalid and non-enforcible for the reason that that ordinance was not properly extended, would be in violation of the constitutional inhibition against the impairment of contracts, does not so raise a constitutional question as to give the Supreme Court jurisdiction of the appeal.

2. ———: ———: ———: MEANING OF CONSTITUTIONAL PROVISION.
A decision of a court that a certain contract is good or bad, valid or
invalid, can not violate the constitutional inhibition against the
impairment of contracts by subsequent legislation. That part of
the Constitution does not guarantee to citizens immunity against
possible errors by courts in construing contracts. It refers to legis-
lation.

Appeal from Buchanan Circuit Court.—*Hon. A. M.
Woodson,* Judge.

TRANSFERRED TO KANSAS CITY COURT OF APPEALS.

*Scarritt, Griffith & Jones* and *R. A. Brown* for ap-
pellant.

To say that though the contract has been performed
the court may not enforce the obligations imposed is to
warrant the city through the judiciary to impair the
obligation of the contract and to deprive the contractor
of its property, contrary to section 10, article 1, and the
fourteenth amendment of the Constitution of the United
States and of section 15, article 2 of the Constitution of
the State of Missouri. In United States v. Muscatine,
8 Wall. 575, it is said in regard to a statutory remedy
for default in a contract: "It has been uniformly held
by this court that such remedies are within the protec-
tion of the Constitution of the United States, and that
any state law which substantially impairs them is as
much prohibited by that instrument as legislation which
impairs otherwise the obligation of the contract. Bron-
son v. Kinzie, 1 How. 311; McCracken v. Hayward, 2
How. 608. We are of the opinion that under the statutes
of Iowa, in force when the contract was made, the re-
lator is entitled to the remedy he asks, and that this
right can no more be taken away by subsequent judicial
decisions than by subsequent legislation. It is as much
within the sphere of our power and duties to protect the
contract from the former as from the latter, and we are
no more concluded by one than the other." In United
States v. Quincy, 4 Wall. 535, it is said: "The ideas

of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution against invasion. The obligation of the contract 'is the law which binds the parties to perform their agreement.' Sturges v. Crowninshield, 4 Wheat. 122. The prohibition has no reference to the degree of impairment. The largest and least are alike forbidden. One of the tests that a contract has been impaired is that its value has, by legislation, been diminished. It is not, by the Constitution, to be impaired at all. This is not a question of degree or cause, but of encroaching, in any respect, on its obligation—dispensing with any part of its force. Planters' Bank v. Sharp, 6 How. 327. It is equally clear that where a State has authorized a municipal corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given can not be withdrawn until the contract is satisfied. The State and the corporation, in such cases, are equally bound. The power given becomes a trust which the donor can not annul, and which the donee is bound to execute; and neither the State nor the corporation can any more impair the obligation of the contract in this way than in any other. People v. Bond, 10 Cal. 570; Dominick v. Sayre, 3 Sandf. 555.'' These constitutional provisions express tersely the deep fundamental principles, the highest convictions of the conscience of our race, and should be applied by this court in adjudicating the rights and relative obligations of the parties to this suit. Their protection was invoked before the trial court and our contention was denied. We again invoke the same guaranties.

*Culver & Phillip* for respondent.

(1) ''For jurisdiction we must look to the record, and unless the record shows that a question involving

the construction of the Constitution was fairly and directly raised and passed upon in the trial court, this court has no jurisdiction on that ground.'' Kirkwood v. Johnson, 148 Mo. 636. ''In the trial of almost any case constitutional questions may arise and be passed upon, but in an appellate court a case involving the construction of the Constitution of the United States, or of this State, within the meaning of section 12, article 6, of the Constitution, is one only wherein it plainly appears upon the face of the record in the appellate court that the question of a particular construction thereof was raised, passed upon, and the ruling thereon excepted to in some appropriate manner by the losing party in the trial court.'' Van Sandt v. Hobbs, 153 Mo. 656. In Hulett v. Railroad, 145 Mo. 35, the defendant sought the jurisdiction of the Supreme Court invoking the provisions of the Federal and State Constitutions guaranteeing to all persons ''due process of law.'' The court said: ''The court or jury, or both combined, may during the trial do a party the most flagrant injustice, and yet his redress does not consist in invoking the constitutional provision now being commented on, but in appeal to a higher court. It must be obvious that if every time a court or jury should in the course of a trial do a party defendant a palpable and obvious wrong that therefore his constitutional rights in the particulars mentioned must be deemed invaded, then the jurisdiction of this court would greatly, and indeed inconceivably, be enlarged. For illustration, take the case of a party sued on a forged note. He is duly brought into court, he makes his defense, but the jury find for the plaintiff. In such case it seems to be too clear for discussion that no constitutional right of the defendant has been violated. Just so in the case at bar.'' Applying these cases to the case at bar, it is clear that there is no ''constitutional question'' involved. The first issue was: Was there a valid contract between the city and the contractor? It was claimed by respondent that

there was no contract, because the "confirmation ordi-
nance" of March 18, 1901, was passed by the common
council after that body had been abolished by an act of
the Legislature (Laws 1901), and ceased to have a legal
existence.    To decide this question it was necessary to
determine only when the act of the Legislature abolish-
ing the common council took effect—whether before or
after the confirmation ordinance was passed; and this
depended only upon the intention of the Legislature.
—The validity of the act of the Legislature was not
attacked; only its construction was in question.    So
there is no constitutional question in that issue.  The
second issue was:  Did the contractor lose his bills,
because he did not complete the work within the speci-
fied time?  It was claimed in the answer and on the
trial that it did not: (a) Because time was not of the
essence of the contract under which the work was done.
(b)  Because the city did not provide in time a graded
street upon which the pavement could be laid.  (c)  Be-
cause the city extended the time by ordinance.  Neither
of these propositions involves the consideration or con-
struction of either the Federal or State Constitution.
They involve only questions of general law as to the con-
struction of contracts, excuses for non-performance of
their terms and the extent of the power granted to the
city by its charter.  All of these are discussed without
reference to any constitutional provision, and in these
no constitutional question is "fairly debatable." It
therefore appears that the questions to be decided are
not such as to give this court jurisdiction.  It is claimed
in answer only that the result of an adverse holding
would deprive appellant of its constitutional rights. But
this does not confer jurisdiction on this court.  "The
subject-matter, that is, the question to be decided, and
not the result of the decision, gives the jurisdiction."
State ex rel. v. Court of Appeals, 105 Mo. 302.  Every
erroneous judgment, in a sense, deprives a person of
his property without process of law.  But an appeal

from every erroneous judgment does not lie to this court. (2) The plea which seeks to give this court jurisdiction is bad upon its face. Section 15, article 2, Constitution of Missouri, referred to in the answer, is as follows: "That no *ex post facto* law, nor law impairing the obligations of contracts . . . can be passed by the General Assembly." Section 10, art. 1, Constitution of the United States, reads as follows: "No State shall enter into any treaty, . . . pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts." The answer does not assert that any statute invoked by respondent is void because in violation of either of these constitutional provisions; nor is it claimed in the answer that any statute had received a judicial construction, and upon the faith of it appellant had made its contract, and that to overrule that decision would be to impair the obligations of the contract. It is pleaded only that if the court should hold that the city is estopped to say that the work was not completed in time, but that the property-owner is not estopped and the taxbills are void, the judgment of the court would be in violation of appellant's rights under the constitutional provisions referred to. But the inhibitions in the State and Federal Constitutions upon their face are limitations upon the legislative branches of the government. It has been held several times by the Supreme Court of the United States that no mere decision of a State court or inferior Federal court on the subject of the validity of a contract or the mode of its discharge, is within the meaning of this provision unless it be founded upon a statute or Constitution of a State passed subsequent to the making of the contract. Miller on U. S. Const., 530-531; Railroad v. Rock, 4 Wall. (U. S.) 181; Railroad v. McClure, 10 Wall. 511; Knox v. Bank, 12 Wall. (U. S.) 383.

ROBINSON, C. J.—This suit was begun by respondent as plaintiff below, to have declared void and cancelled, certain taxbills issued to appellant by the city of St. Joseph, in payment of the cost of certain street improvements made in front of respondent's property. The general improvement consisted of paving, curbing and laying sidewalks on Ashland avenue for a distance of about two thousand feet at an aggregate cost of something like fifteen thousand dollars. The taxbill issued against respondent's property and sought to be cancelled, however, being only for the sum of $984.18. The grounds alleged by respondent for having said taxbills cancelled are that they are void, first, because the contract for the work was not approved by the common council of the city of St. Joseph, and, second, because if the contract was approved by the council the contractor failed to comply with the provision thereof and to complete the work within the time specified.

Defendant's answer denied, first, that the contract had not been confirmed; admits that the work was not completed within the time specified in the original contract, and pleaded in avoidance that the time had been extended by ordinance, and that, even if it had not been extended, the city had prevented appellant from completing the pavement within the required time, by failing to seasonably grade the street by independent contractors as it undertook to do, and that the city was therefore estopped to say that the work was not completed within the specified period. The answer contains this further averment, and on account of which appellant now contends this court had jurisdiction of the case on this appeal:

"And this defendant states that for the court to hold or declare that the said city, by reason of the premises, is estopped to say that the work was not completed within the time required by the terms of the contract, but that the plaintiffs are not for that reason precluded from so saying, and that the taxbills described

in the petition and therein alleged to have been issued in part payment of the price of said work are void, would be in violation of the defendant's rights established by section 15, article 2, of the Constitution of Missouri, of immunity against laws impairing the obligation of contracts, and contrary to the rights of defendant under section 10 of article 1 of the Constitution of the United States, inhibiting state laws impairing the obligations of contracts, and this defendant invokes the protection of the rights guaranteed under the constitutional provisions aforesaid.''

As is readily seen, there is nothing in the character of the suit, or in the amount involved, to give to this court jurisdiction to hear and determine this appeal, unless it be true as appellant asserts that a constitutional question is raised by the last paragraph of its answer.

If we may assume that the appellant's last plea is good, let us see what was done in the case, to give this court jurisdiction of this appeal. The first issue raised by the pleadings was, Did there exist a valid contract between the city and defendant for doing the work, for which the taxbills were issued? The respondent, as plaintiff below, contended against the validity of the contract, because the confirmatory ordinance as it is called, of March 19, 1901, was passed by the common council after that body had been abolished by an act of the Legislature passed and approved March 13, 1901, and after it ceased to have any legal existence. Appellant's contention was, that the action of the council was legal and the contract was valid.

To determine this issue (which was found in favor of the appellant by the trial court) the only question for consideration was, When did the act of the Legislature abolishing the common council of the city of St. Joseph, take effect? The validity of the act was in nowise questioned by either party to the controversy. Its construction was alone involved. There is nothing, then, in that

issue of the case to give this court jurisdiction of this appeal.

The next issue raised by the pleadings, and the one upon which the trial court found in favor of the plaintiff and upon which its decree is predicated, was this: Did defendant lose the right to enforce its taxbills issued against plaintiff's property because it had not completed the work of paving, curbing and laying sidewalks on Ashland avenue within the time originally specified? It was defendant's contention at the trial of the case, as it was by its answer filed, that it did not lose its right to the taxbills issued against plaintiff's property for the reasons, first, that time was not of the essence of the contract under which the work was done, and second, because the city did not provide in time a graded street upon which the pavement could be laid, as provided by the contract it should do, and because it was prevented from prosecuting its work by the express orders of the city's officers, and, third, because the city by ordinance duly passed and approved had extended the time for the completion of the work by the defendant, and that the work was done during that extended period.

The mere statement of the issue tendered by this plea shows upon its face that no constitutional question was involved in its determination, but only the application of general principles of law governing contracts and the excuse for their non-performance in the original specified time, and the question of the extent of the power of St. Joseph under its charter privileges. The consideration of no proposition asserted by appellant, to uphold the validity of the taxbills issued to and held by it, involves the construction of either the State or the Federal Constitution.

It is also to be noted that the averment in the last paragraph of defendant's answer is not that any statute, act or ordinance invoked by respondent is void because in violation of the provisions of section 15 of article 2

of the Constitution of .Missouri, or of section 10 of arti-
cle 1 of the Constitution of the United States, or that its
contract with the city for the doing of the work of
grading and paving its streets.was made upon the faith
of a particular construction which the court had placed
upon an act, statute or ordinance, the reversal of which
construction, or the overruling of which opinion at this
time would be to impair the obligation of its contract
made with the city; but the averment is, ''that for the
court to hold or declare that the said city by reason of
the premises is estopped to say that the said work was
not completed within the time required by the terms
of the contract, but that the plaintiffs are not for that
reason precluded from so saying, and that the taxbills
described in the petition and therein alleged to have
been issued in part payment of the price of said work
are void, would be in violation of defendant's rights,
established by section 15, article 2 of the Constitution of
Missouri, of immunity against laws impairing the ob-
ligation of contracts and contrary to the rights of the
defendant under section 10 of article 1 of the Constitu-
tion of the United States inhibiting state laws impair-
ing the obligation of contracts.''

If it could be said that the reversal by a court of a
prior decision construing an act, law or ordinance, upon
the faith of which prior construction a contract had
been made, would operate to impair the obligation of
such contract, that would not imply that a constitutional
right of a defendant claiming under such a contract
had been violated, or that a constitutional question was
involved in the determination of his case.

The language of the State Constitution is that no
law impairing the obligation of contracts can be passed
by the General Assembly, while that of the Federal Con-
stitution is, that no State shall pass any law impairing
the obligation of contracts. The decision of a court
that a certain contract is good or bad, valid or invalid,
enforcible or non-enforcible against the assertion of a

claimant under such a contract, can in no sense be said to violate his or her constitutional right under the provision of either the State or the Federal Constitutions mentioned. These provisions inhibit only the impairment of the obligation of contracts by subsequent legislation. Neither of these instruments undertakes to guarantee to the citizens immunity against the possible error of construction, by the courts, of contracts before them for consideration.

As the obligations sought to be cancelled by this proceeding are less in amount than forty-five hundred dollars, and as no constitutional question was properly involved in the consideration of the contract out of which they arose, this court is wanting in jurisdiction to hear and determine the case on appeal, and the cause is ordered transferred to the Kansas City Court of Appeals for hearing and determination there. All concur.